IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN WESLEY WILLIAMS,

    Plaintiff,                      No. CIV S-09-1245 GGH P

    vs.

GRANNIS, et al.,                            <u>ORDER</u> and

    Defendants.                 <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Plaintiff, a state prisoner proceeding pro se and in forma pauperis, seeks redress for alleged civil rights violations pursuant to his Second Amended Complaint filed October 16, 2009 (Docket 16). Plaintiff is a prisoner at California State Prison-Kern Valley, in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), but the allegations of his complaint are premised on his prior incarceration at California State Prison-Sacramento.

        Plaintiff's initial complaint was dismissed with leave to amend on June 5, 2009. On August 3, 2009, plaintiff filed his Amended Complaint (Docket 10), which this court found stated a claim against defendant Bishop (Correctional Sergeant), but not defendants Wenkler (Correctional Officer), Leiber (Correctional Captain), or Flint (Correctional Lieutenant). <u>See</u> Order filed September 14, 2009 (Docket 12). Bishop has now executed and filed a waiver of service (Docket No. 17). Plaintiff was granted leave to file a Second Amended Complaint, which the court now reviews. Plaintiff again names as defendants Bishop, Wenkler, and Lieber, as well as CDCR, but not Flint.

\\\\\

\\\\\

LEGAL STANDARDS

As previously explained, this court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

A complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). "The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure 1216, pp. 235-235 (3d ed. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, No. 07-1015, 2009 WL 1361536 at * 12 (May 18, 2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

\\\\\

In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.Ct. 1848 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843 (1969).

DISCUSSION

The Second Amended Complaint ("SAC"), premised on plaintiff's incarceration at California State Prison-Sacramento ("CSP-S"), alleges that defendants – CDCR, and Correctional Sergeant B. Bishop, Correctional Captain D. Lieber, and Correctional Officer R. Wenkler, each acting in their individual and official capacities – engaged in a "campaign of retaliatory harassment" against plaintiff for filing grievances against Wenkler – specifically, one grievance filed by plaintiff against Wenkler that plaintiff was persuaded to withdraw, and an inmate class action against Wenkler in which plaintiff participated. Plaintiff alleges violation of his civil rights under 42 U.S.C. § 1983, pursuant to the First, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, as well as claims under the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and California Government Code Section 11135. For the reasons discussed below, plaintiff states claims only under Section 1983, against Bishop and Wenkler, but will not be given further leave to amend to restate his allegations against Lieber.

Several general observations require note. First, a continuing problem persists in the Second Amended Complaint – plaintiff's legal claims are only summarily set forth in the preface and conclusion of the complaint, without linkage to his factual allegations. See McHenry v. Renne, 84 F.3d 1172, 1179-80 (9th Cir. 1996) (plaintiff must link his factual allegations to his legal claims). However, viewing plaintiff's Second Amended Complaint as a whole, it is clear that plaintiff's overarching claim is that each defendant either directly retaliated, or created the opportunity for others to retaliate, against plaintiff for exercising his First Amendment right to

file prison grievances. It is plaintiff's contention that Wenkler not only directly retaliated against plaintiff, but Bishop acted in support of Wenkler and thus as further retaliation against plaintiff, in violation of the Eighth Amendment; further, that their common supervisor, Lieber, condoned/made possible/covered up the allegedly illegal conduct of Wenkler and Bishop. While the court has liberally construed plaintiff's claims against Bishop and Wenkler, the failure of plaintiff to articulate specific acts by Lieber in support of his allegations requires dismissal of this defendant.

Second, no further opportunity to amend the complaint is also warranted by the SAC's singular allegation of racial discrimination ("Defendant Wenkler has established an obvious pattern and practice of mistreatment towards african american inmates," SAC, at 11), which plaintiff alleged in more detail when administratively exhausting his claims (see, e.g., Docket No. 16 at 42 ("every inmate who has conflict with Wenkler is black . . . it is clear that this is a racial hate issue going on")). " 'To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.' " Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001) (quoting Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir.1998)). "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (quoting Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir. 1994)) (emphasis in original). Plaintiff has had sufficient opportunity to state a plausible racial discrimination claims and will not be granted further opportunity.

Third, while plaintiff seeks both damages and injunctive relief, plaintiff's transfer from California State Prison-Sacramento renders moot his request for injunctive relief absent evidence (not provided) that he will be transferred back. See Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam) (transfer to another prison by prisoner challenging conditions of

4

confinement renders moot any request for injunctive relief absent evidence of reasonable expectation that prisoner will be transferred back); see also, Preiser v. Newkirk, 422 U.S. 395, 402-03 (1975) (applying principle to both injunctive and declaratory relief).

Finally, the Sixth Amendment (which secures the rights and procedures accorded criminal defendants) is inapposite to all of plaintiff's claims, and will be dismissed.

A. Claim One

Pursuant to his "Claim One," SAC at 4-7, plaintiff alleges that defendants CDCR and Correctional Captain D. Lieber promoted an informal policy ("code of silence") of ignoring CDCR's written policy requiring adherence to the duties and obligations set forth in its Correctional Officer Job Specification, thus enabling Wenkler to harass plaintiff in retaliation for filing grievances against him. SAC at 4. The SAC alleges that plaintiff filed a grievance against Wenkler, but was persuaded by the interviewing officer (Lt. Flint) to withdraw his grievance upon the promise that Wenkler would become more respectful. However, Wenkler allegedly became more abusive and engaged in a "'campaign of retaliatory harassment' toward plaintiff" for filing the grievance, which included making false reports about plaintiff to defendant Bishop. These allegedly false reports included that another inmate engaged in unauthorized photocopying on plaintiff's behalf, which resulted in punishing plaintiff with a week-long search of his cell and denial of telephone access for a month. Additional allegations of retaliatory conduct by Wenkler are set forth in plaintiff's Claim Two (e.g., that Wenkler falsely stated to Bishop that plaintiff was "roaming the yard," resulting in Bishop placing plaintiff in a holding cage), and Claim Three (e.g., that Wenkler falsely stated to Bishop that he felt threatened by plaintiff, resulting in Bishop again placing plaintiff in a holding cage).

Plaintiff contends that "[d]efendant Leiber intentionally ignored and disregarded various complaint[s], facts, and information from subordinates, inmates, and citizens concerning the violation and disregard of correctional duties by Defendant Wenkler, and failed and/or refused to rectify, abolish, and prohibit the defective policy which authorized and permitted

5

Defendant Wenkler to violate correctional duties to intentionally harass, vex, and annoy inmates, including Plaintiff, for the filing and participating in the filing of inmate grievances." SAC, at 7.

Plaintiff's allegations fail to state a claim against CDCR. With the exception of prospective injunctive relief, which plaintiff cannot pursue (see discussion, supra), the California Department of Corrections and Rehabilitation, a state agency, is immune from a Section 1983 suit under the Eleventh Amendment. Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 907 (1984). Accordingly, CDCR will be dismissed from this action.

Plaintiff states a retaliation claim against Wenkler, based on plaintiff's allegations against Wenkler throughout his Second Amended Complaint. Retaliatory actions by prison officials are cognizable under Section 1983. See Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). "Of fundamental import to prisoners are their First Amendment rights to file prison grievances, and to pursue civil rights litigation in the courts. Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." Rhodes v. Robinson, 408 F.3d 559, 567 (citations, internal quotations and footnote omitted) (9th Cir. 2005). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner' protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Id., 408 F.3d at 567-68 (fn. omitted). The plaintiff must plead facts which suggest that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the defendant's conduct, Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989), with an absence of legitimate correctional goals, Pratt, 65 F.3d at 806. A plaintiff who fails to allege a chilling effect may still state a claim if he alleges that he suffered some other harm.

Rhodes, 408 F.3d at 568, n. 11; see also, Brodheim v. Cry, 584 F.3d 1262, 1269-1271 (9th Cir. 2009).

Pursuant to these legal principles, and viewing the allegations of the Second Amended Complaint as a whole, plaintiff states a retaliation claim against Wenkler. Accordingly, service of process will be directed upon Wenkler.

Plaintiff's allegations against defendant Correctional Captain D. Lieber present more difficult issues. Lieber is sued in her supervisorial role over both Wenkler and Bishop (see SAC, at ¶ 29). Of the constitutional provisions relied on by plaintiff, the First Amendment most clearly grounds plaintiff's claims against Lieber.

Supervisors may not be sued under Section 1983 for the actions of their employees under a theory of respondeat superior. Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979). Thus, the causal link between Lieber and the claimed constitutional violations must be specifically alleged. Lieber, a state agency official, cannot be sued for damages in her official capacity, but only in her individual capacity. Defendants sued in their individual capacity must be alleged to have: personally participated in the alleged deprivation of constitutional rights; known of the violations and failed to act to prevent them; or implemented a policy that repudiates constitutional rights and was the moving force behind the alleged violations. Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991); Hansen v. Black, 885 F.2d 642 (9th Cir. 1989); Taylor v. List, 880 F.2d 1040 (9th Cir. 1989). A plaintiff must allege that the defendant personally participated in, directed, or had knowledge of the alleged constitutional violation but failed to prevent it or otherwise intercede. Id., 880 F.3d at 1043-1044, 1045. "Without proximate cause, there is no § 1983 liability." Van Ort v. Estate of Stanewich, 92 F.3d 831, 837 (9th Cir. 1996). "Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy "itself is a repudiation of constitutional rights" and is "the moving force of the constitutional violation." Hansen, supra, 885 F.2d at 646 (quoting Thompkins v. Belt, 828 F.2d 298, 303-04 (5th

Cir.1987)).  Significantly, there is no Section 1983 liability for violating prison policy unless it also violates a specific constitutional right.  <u>Case v. Kitsap County Sheriff's Department</u>, 249 F.3d 921, 929 (9th Cir.2001) (qualified immunity context).

### B. <u>Claim Two</u>

In his second claim, plaintiff alleges that "[a]s a direct result" of the facts set forth in Claim One, particularly "for filing and participating in the filing of inmates grievances," SAC, at 7, Wenkler pursued a campaign of retaliatory harassment against plaintiff, which was further endorsed and promoted by Wenkler's immediate supervisor, Correctional Sergeant Bishop.  Both are named as defendants in Claim Two.

In addition to Wenkler "referring to Plaintiff as a 'rat' to other supervisors and co-workers, including Defendant Bishop," SAC, at 7, plaintiff recounts two incidents for which he has demonstrated administrative exhaustion.  The first alleges that Wenkler refused to allow plaintiff entrance to his housing unit after a counseling appointment in June 2006, then reported to Bishop that plaintiff was "roaming the yard facility following recall and couldn't account for time."  Bishop then ordered that plaintiff be locked for more than an hour in a holding cage that "was drenched and reeked of pepper spray," where plaintiff was required to strip to his shorts, resulting in bodily contact with the pepper spray and causing "burning of skin, lungs, and eyes, teary eyes and shortness of breath."  Plaintiff alleges that Bishop refused to resolve plaintiff's dispute with Wenkler, or remove plaintiff from the holding cage, telling him to shut up and that he was "property of CDC;" that  Bishop thereafter denied plaintiff "medical decontamination" or even a "regular shower" to rid himself of the pepper spray, instead requiring that he spend the night with burning skin "to teach him a lesson" for filing a grievance.  SAC, at 7- 10; Exh. B (this grievance administratively exhausted).

The second incident alleges that "[t]o further impose retaliatory campaign of harassment for being labeled a 'rat' for filing and participating in the filing of inmate grievance(s), Defendant Bishop ordered Plaintiff be subjected to disciplinary proceedings on

false Rules Violation Report (RVR) charges of 'Refusing a Direct Order,' which chilled Plaintiff's first amendment right to file an inmate grievance, when Plaintiff filed another inmate grievance related to the dispute described above . . ." SAC, at 10; see also Exh. B (demonstrating administrative exhaustion of this grievance; RVR based on plaintiff's attempted use of telephone during facility lockdown).

As previously found by the court, the first incident states an Eighth Amendment cruel or unusual punishment claim against Bishop based on plaintiff's placement, with minimal clothing, in the holding cell contaminated with pepper spray, denying plaintiff an opportunity to cleanse his body, and plaintiff's resulting injuries.[1] To state a claim for cruel and unusual punishment in violation of the Eighth Amendment, plaintiff must allege facts sufficient to show that defendants subjected him to "unquestioned and serious deprivations of basic needs." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Whether a particular event or condition in fact constitutes "cruel and unusual punishment" is gauged against "the evolving standards of decency that mark the progress of a maturing society." Schwenk v. Hartford, 204 F.3d 1187, 1196 (9th Cir. 2000), citing Hudson v. McMillian, 503 U.S. 1, 8, 112 S.Ct. 995 (1992), and quoting Rhodes, supra, 452 U.S. at 346. Although the absence of serious injury is relevant to the Eighth Amendment inquiry, it is not determinative. Hudson, 503 U.S. at 7.[2]

---

[1] This court previously found that plaintiff stated an Eighth Amendment claim against defendant Bishop based on plaintiff's placement in a holding cage contaminated with pepper spray. Docket No. 12, at 2-3. While the court found the allegations, as then framed, insufficient to state a claim based on inadequate medical care, id. at 4-5, 8, it found that plaintiff stated a claim against Bishop based on the Eighth Amendment's prohibition against cruel or unusual punishment. The instant Second Amended Complaint clarifies that plaintiff was *twice* placed in the holding cage contaminated with pepper spray, both times pursuant to Bishop's orders. Both placements support an Eighth Amendment claim based on cruel and unusual punishment; the second placement (discussed infra) also supports an Eighth Amendment claim based on deliberate indifference to medical care.

[2] In general, "extreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,' Rhodes, supra, 452 U.S. at 347 [], "only those deprivations denying

9

This incident does not, however, state an Eighth Amendment against Wenkler – while Bishop's actions against plaintiff may have been initiated as retaliation in support of Wenkler, the complaint fails to suggest that Wenkler had any authority to order such punishment or further influence it.

In addition to the Eighth Amendment claim against Bishop, this incident supports First Amendment retaliation claims against both Wenkler and Bishop, based on plaintiff's allegation that their conduct was cooperative and motivated by retaliation.

The second incident also supports a retaliation claim against Bishop. As Rhodes demonstrates, the alleged retaliatory conduct need not itself violate the Constitution; it is the fact of retaliation in response to a prisoner exercising his First Amendment rights that violates the Constitution.

In summary, Claim Two states an Eighth Amendment claim against Bishop, and First Amendment claims against both Wenkler and Bishop.

3. Claim Three

In his third and last claim, plaintiff states that on July 17, 2006, he prepared and participated in the filing of a class action inmate grievance against Wenkler, pursuant to the representation of inmate Wright. Plaintiff asserts that Wenkler "intercepted the Class Action inmate grievance and following review blamed Plaintiff . . ." SAC, at 10. Plaintiff alleges that Wenkler then "escorted Plaintiff to Lt. Flint for RVR disciplinary hearing initiated by order of Defendant Bishop and referenced by Claim Two above." Id. While plaintiff waited on the bench prior to the hearing, Wenkler allegedly informed Bishop, falsely, that plaintiff and Wright had made threats against Wenkler, and that Wenkler felt threatened, and he requested that Bishop place plaintiff and Wright in administrative segregation. When plaintiff protested and accused

---

'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson [v. Seiter, 501 U.S. 294], at 298, [111 S.Ct. 2321], at 2324 (1991) (quoting Rhodes, supra, 452 U.S., at 347, 101 S.Ct., at 2399) (citation omitted).

Wenkler of dishonesty and retaliation, Bishop stated, "No one talks about one of my officers like that," and ordered that plaintiff again be locked inside the holding cage that was contaminated with pepper spray. Id. at 11. Plaintiff alleges that, "[t]he temperature was well above 90 degrees and holding cage one sits directly in the hot blazing sunlight which caused the pepper spray drenched holding cage to become even more so torturous with skin, eyes, and lung burning heat." Id. Plaintiff states that he is prescribed psychiatric medications that make him particularly heat sensitive, and therefore subject to CDCR's "Heat Plan," which requires that participating inmates be moved indoors when temperatures reach 90 or more degrees. Id. at 11-12; Exh. C. Plaintiff alleges that he was left in the cage for "about an hour," despite informing defendants that he was subject to the Heat Plan and requesting that he at least be moved to a cage out of direct sunlight. Plaintiff alleges that "[i]n addition to the burning of skin, eyes, and lungs . . . [he] suffered weakness, dizziness, nausea, and disorientation with blurred vision . . . " Id. at 12. "Plaintiff was then forced to attend the RVR disciplinary hearing with burning skin, eyes, and lungs, dizziness, nausea and blurred vision without any regard or concern over the obvious disoriented condition as a direct result of the malicious and sadistic punishment imposed by defendant's [sic] Bishop and Wenkler based solely on the filing and participating in the filing of inmate grievance(s)." Id. at 12-13. Plaintiff has exhausted his administrative remedies on this claim. SAC, Exh. D.

        For the reasons previously discussed, these allegations support First Amendment claims against Wenkler and Bishop, and an Eighth Amendment claim against Bishop for cruel and usual punishment. These allegations further support claim against Bishop for deliberate indifference to medical needs. The Eighth Amendment's proscription against cruel and unusual treatment is violated when officials remain deliberately indifferent to the serious medical needs of convicted prisoners. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285 (1976). A medical need is "serious" if the failure to treat it or a delay in treating it could result in further significant injury or the "unnecessary and wanton infliction of pain." Id. at 104. To state a claim, plaintiff must allege acts or omissions evidencing defendant knew of and disregarded his serious medical

needs. Id. at 106; see also, Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994) ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). The obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir.1995).

Plaintiff does not state a claim under the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), or California Government Code Section 11135, which present near-identical rights and obligations.[3] Plaintiff alleges that he is an individual with a qualified disability within the meaning of the ADA and the Rehabilitation Act, based on his participation in CDCR's Mental Health Services Delivery System ("MHSDS"), and his treatment with medication that renders him particularly sensitive to heat. SAC, at 3. However, plaintiff does not allege his "exclusion" from CDCR services, programs or activities, or that he was discriminated against based on his alleged disability. Cf., 42 U.S.C. § 12132 ("no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity"). Rather, plaintiff contends that the punishment he received, and which he independently challenges, was deliberately indifferent to his unique medical needs. This is an Eighth Amendment claim.

For the foregoing reasons, the court will order service on Bishop and Wenkler and recommends that CDCR and Libeler be dismissed.

\\\\\

---

[3] Title II of the ADA was expressly modeled after Section 504. Thus, "[t]here is no significant difference in analysis of the rights and obligations created" by these statutes. Zukle v. Regents of University of California, 166 F.3d 1041, 1045, n.11 (9th Cir. 1999). See 42 U.S.C. § 12133 ("The remedies, procedures, and rights set forth in [§ 504] shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination in violation of section 12132 of this title."). Similarly, California Government Code § 11135 is identical to the Rehabilitation Act except the entity must receive State financial assistance rather than Federal financial assistance. Cal. Govt. Code § 11135.

CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Service be made on defendants Bishop and Wenkler;

2. The Clerk of the Court shall send plaintiff two (2) USM-285 forms, one summons, an instruction sheet and a copy of the second complaint filed October 16, 2009.

5. Within thirty days from the date of this order, plaintiff shall complete the attached Notice of Submission of Documents and submit the following documents to the court:

    a. The completed Notice of Submission of Documents;

    b. One completed summons;

    c. One completed USM-285 form for each defendant listed in number 1 above; and

    d. Three (3) copies of the endorsed second amended complaint filed October 16, 2009.

6. Plaintiff need not attempt service on defendants and need not request waiver of service. Upon receipt of the above-described documents, the court will direct the United States Marshal to serve the above-named defendants pursuant to Federal Rule of Civil Procedure 4 without payment of costs.

Further, IT IS HEREBY RECOMMENDED that:

1. Defendant CDCR and Lieber be dismissed from this action; and

2. Plaintiff's claim under the Fourteenth Amendment, Sixth Amendment, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, and California Government Code Section 11135, be dismissed without leave to amend. The Clerk of Court is directed to assign a district judge to this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within four-

teen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 23, 2010

   /s/ Gregory G. Hollows

United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN WESLEY WILLIAMS,

    Plaintiff,               No. CIV S-09-1245 GGH P

    vs.

GRANNIS, et al.,                      NOTICE OF SUBMISSION

    Defendants.              OF DOCUMENTS

_____/

    Plaintiff hereby submits the following documents in compliance with the court's order filed _____:

        ____ completed summons form

        ____ completed USM-285 forms

        ____ copies of the _____
                          Complaint/Amended Complaint

DATED:

                                              _____
                                              Plaintiff

will1245.screen.SAC