IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN WESLEY WILLIAMS,

    Plaintiff,                           No. CIV S-09-1245 FCD GGH P

    vs.

NOLA GRANNIS, et al.,

    Defendants.               FINDINGS AND RECOMMENDATIONS

_____/

Introduction

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' motion to dismiss, filed on April 23, 2010, brought by defendant Correctional Sergeant Bishop, to which plaintiff filed his opposition on May 11, 2010, after which defendant filed a reply on May 17, 2010. After carefully reviewing the record, the undersigned recommends that defendant's motion should be granted on the ground of plaintiff's failure to exhaust administrative remedies.

Complaint

        Plaintiff's complaint, originally filed May 6, 2009, proceeds on his second amended complaint ("SAC"), filed October 16, 2009. Plaintiff is a prisoner at Salinas Valley State Prison, in the custody of the California Department of Corrections and Rehabilitation

1

1  ("CDCR"), but the allegations of his complaint are premised on his prior incarceration at
2  California State Prison-Sacramento. The SAC alleges that defendants Correctional Sergeant B.
3  Bishop and Correctional Officer R. Wenkler, each acting in their individual and official
4  capacities, engaged in a "campaign of retaliatory harassment" against plaintiff for filing
5  grievances against Wenkler.[1] Plaintiff further alleges two incidents in which, pursuant to
6  Bishop's orders, plaintiff was placed in a holding cell contaminated with pepper spray. Plaintiff
7  alleges that defendants Bishop and Wenkler violated his First Amendment right to be free of
8  retaliatory conduct for protected activity, and that defendant Bishop additionally violated his
9  Eighth Amendment rights by subjecting plaintiff to cruel and unusual punishment and showing
10 deliberate indifference to his medical needs.

Claim One

In its February 24, 2010 findings, subsequently adopted by the district court on April 6, 2010, this court found that for screening purposes, Claim One stated a retaliation claim against defendant Wenkler only. Although the pending motion to dismiss is brought by defendant Bishop, the undersigned describes Claim One because its allegations relate to Claims Two and Three against Bishop, and because defendants have indicated that Bishop and Wenkler intend to file a single responsive pleading following the court's ruling on the instant motion. Motion to Dismiss ("MTD ") at 3, fn. 1.

Plaintiff's first claim alleges, in relevant part, that plaintiff filed a grievance against Wenkler, but was persuaded by another officer to withdraw his grievance upon the promise that Wenkler would become more respectful. However, Wenkler allegedly became more abusive and engaged in a "'campaign of retaliatory harassment' toward plaintiff" for filing the grievance, which included making false reports about plaintiff to defendant Bishop. One

---

[1] Named defendants CDCR and Correctional Captian D. Lieber were dismissed from the action by order dated April 6, 2010. Plaintiff's alleged claims pursuant to the Sixth and Fourteenth Amendments, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, and California Government Code Section 11135 were also dismissed on that date.

2

such report was that another inmate engaged in unauthorized photocopying on plaintiff's behalf. As a result, plaintiff was punished with a week-long search of his cell and denial of telephone access for a month. SAC at 4-7.

Claim Two

In his second claim, plaintiff alleges that "[a]s a direct result" of the facts set forth in Claim One, particularly "for filing and participating in the filing of inmates grievances," Wenkler continued his retaliatory campaign against plaintiff, which was further endorsed and promoted by Wenkler's immediate supervisor, defendant Bishop. SAC at 7. Plaintiff describes two incidents in this claim.

Holding Cell Incident

In the first incident, plaintiff alleges that Wenkler refused to allow plaintiff entrance to his housing unit after a counseling appointment on June 29, 2006, then reported to Bishop that plaintiff was "roaming the yard facility following recall and couldn't account for time." Bishop then ordered that plaintiff be locked for more than an hour in a holding cage that "was drenched and reeked of pepper spray," where plaintiff was required to strip to his shorts, resulting in bodily contact with the pepper spray and causing "burning of skin, lungs, and eyes, teary eyes and shortness of breath." Plaintiff alleges that Bishop refused to resolve plaintiff's dispute with Wenkler or remove plaintiff from the holding cage, telling him to shut up and that he was "property of CDC"; that Bishop thereafter denied plaintiff "medical decontamination" or even a "regular shower" to rid himself of the pepper spray, instead requiring that he spend the night with burning skin "to teach him a lesson" for filing a grievance. SAC at 7- 10; MTD, Ex. A at 2 (indicating date of incident).

In its February 24, 2010 findings, later adopted by the district court, the undersigned noted its previous holding that "the first incident states an Eighth Amendment cruel or unusual punishment claim against Bishop based on plaintiff's placement, with minimal clothing, in the holding cell contaminated with pepper spray, denying plaintiff an opportunity to

3

cleanse his body, and plaintiff's resulting injuries." Doc. 19 at 9.  In addition, "this incident supports First Amendment retaliation claims against both Wenkler and Bishop, based on plaintiff's allegation that their conduct was cooperative and motivated by retaliation." Id. at 10.

RVR Incident

The second incident alleges that "[t]o further impose retaliatory campaign of harassment for being labeled a 'rat' for filing and participating in the filing of inmate grievance(s), Defendant Bishop ordered Plaintiff be subjected to disciplinary proceedings on false Rules Violation Report (RVR) charges of 'Refusing a Direct Order,' which chilled Plaintiff's first amendment right to file an inmate grievance[.]" SAC at 10.

In its February 24, 2010 findings, the undersigned found that the second incident supports a retaliation claim against Bishop.  "In summary, Claim Two states an Eighth Amendment claim against Bishop, and First Amendment claims against both Wenkler and Bishop." Doc. 19 at 10.

Claim Three

In plaintiff's third claim, described in this court's findings of February 24, 2010, plaintiff alleges that Wenkler intercepted a "class action" grievance that plaintiff had helped prepare.  While plaintiff waited for the RVR hearing described in Claim Two, Wenkler allegedly told Bishop, falsely, that plaintiff had threatened him, and requested plaintiff to be put in administrative segregation.  Notwithstanding plaintiff's protests that Wenkler was retaliating against him, Bishop allegedly ordered that plaintiff be locked in a holding cage contaminated with pepper spray (the second "holding cage" incident alleged by plaintiff).  Plaintiff alleges that he was left in the cage for over an hour in his boxer shorts, where he was exposed to high temperatures and the painful effects of the pepper spray.  Bishop allegedly denied plaintiff's request to move him to a cell out of direct sunlight, and plaintiff was forced to attend the RVR hearing "with burning skin, eyes, and lungs, dizziness, nausea and blurred vision . . ." SAC at 10-13; Doc. 19 at 10-11.  This incident allegedly took place on July 17, 2006.  MTD, Ex. B. at 2.

1   In its February 24, 2010 findings, the undersigned determined that Claim Three
2   alleged "First Amendment claims against Wenkler and Bishop, and an Eighth Amendment claim
3   against Bishop for cruel and unusual punishment." Doc. 19 at 11. It also alleged an Eighth
4   Amendment deliberate indifference claim against Bishop. Id.
5   Motion to Dismiss
6   Defendant Bishop brings a motion to dismiss plaintiff's allegations in Claim Two
7   regarding the RVR incident pursuant to Fed. R.Civ. 12(b)(6) for failure to state a claim, and to
8   dismiss all of Claim Two pursuant to non-enumerated Fed. R. Civ. P. 12(b), for plaintiff's
9   alleged failure to exhaust administrative remedies.[2] MTD at 5-10. The undersigned reviews
10  these arguments in turn.
11  I.  Fed. R. Civ. 12(b)(6) Motion
12  *Legal Standard*
13  In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6),
14  a complaint must contain more than a "formulaic recitation of the elements of a cause of action;"
15  it must contain factual allegations sufficient to "raise a right to relief above the speculative
16  level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007). "The
17  pleading must contain something more...than...a statement of facts that merely creates a suspicion
18  [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice
19  and Procedure § 1216, pp. 235-236 (3d ed. 2004). "[A] complaint must contain sufficient factual
20  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal,
21  ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).
22  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to
23  draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.
24  In considering a motion to dismiss, the court must accept as true the allegations of

---

[2] The motion does not seek to dismiss Claim One or Claim Three, or any portions thereof.

the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S. Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798, 803 (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

The court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986). The court need not accept legal conclusions "cast in the form of factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

*Discussion*

Defendant Bishop argues that the allegations in Claim Two that Bishop retaliated against plaintiff by subjecting him to a false RVR are not colorable under § 1983 and must be dismissed because they necessarily implicate the prison disciplinary finding of guilt.

In Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364 (1994), an Indiana state prisoner brought a civil rights action under § 1983 for damages. Claiming that state and county officials violated his constitutional rights, he sought damages for improprieties in the

6

investigation leading to his arrest, for the destruction of evidence, and for conduct during his trial ("illegal and unlawful voice identification procedure").  Convicted on voluntary manslaughter charges, and serving a fifteen year term, plaintiff did not seek injunctive relief or release from custody.  The United States Supreme Court affirmed the Court of Appeal's dismissal of the complaint and held that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under 1983.

Heck, 512 U.S. at 486, 114 S.Ct. at 2372.  The Court expressly held that a cause of action for damages under § 1983 concerning a criminal conviction or sentence cannot exist unless the conviction or sentence has been invalidated, expunged or reversed.  Id.

In Edwards v. Balisok, 520 U.S. 641, 117 S.Ct. 1584 (1997), the Supreme Court held that Heck applies to challenges to prison disciplinary hearings when the nature of the challenge to the procedures could be such as necessarily to imply the invalidity of the judgment. See also Cunningham v. Gates, 312 F.3d 1148, 1153 (9th Cir. 2002) (holding that where prison disciplinary action "arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed.").

Defendants have submitted for judicial notice the prison records documenting the RVR at issue here.  Req. for Jud. Not. In Support of MTD, Ex. A-1.  These indicate that on June 28, 2006, petitioner was found guilty of "Refusing a Direct Order" in violation of CCR § 3005(b) in RVR C-06-06-080.  Id. at 2.  Plaintiff was found guilty based on a preponderance of the evidence, which the hearing officer summarized as "very simple.  Inmate Williams refused a

1  direct order from Officer D. Hobard to submit to an unclothed body search after an hour late
2  returning to the block yard after recall." Id. at 7.  As a result of this RVR, plaintiff was assessed
3  a 30-day loss of good time credits.  Id. at 8.
4        Here, as defendants contend, any determination that false evidence was
5  manufactured against plaintiff, or that this RVR was not actually based on the cited evidence but
6  retaliatory in nature, would necessarily require the disciplinary conviction to be found invalid.
7  See Balisok, supra, 520 U.S. at 648 (holding that plaintiff's claim that disciplinary conviction
8  resulted from "deceit and bias on the part of the decisionmaker" was not cognizable under
9  § 1983); Sheldon v. Hundley, 83 F.3d 231, 234 (9th Cir. 1996) (where plaintiff's "First
10 Amendment claims are so entangled with the propriety of the disciplinary result, which triggered
11 the loss of good-time credits, that ruling in [plaintiff's] favor on First Amendment grounds would
12 necessarily imply the invalidity of the disciplinary result and the lengthened sentence[,]"
13 plaintiff's First Amendment claims are barred by Heck).  Plaintiff's allegations that "disciplinary
14 proceedings were initiated against [him] as a direct result of retaliatory fabrications alleged by
15 Defendant Wenkler to Defendant Bishop[]" (Opposition ("Opp") at 4) are analogous to
16 allegations in Balisok and Sheldon, in that the merits of these allegations cannot be disentangled
17 from the validity of the disciplinary conviction itself.
18       Thus, plaintiff's allegations in Claim Two concerning the false and/or retaliatory
19 RVR cannot be maintained under the Heck bar.
20 II. Fed. R. Civ. P. 12(b) Motion
21 *Legal Standard*
22       In a motion to dismiss for failure to exhaust administrative remedies under non-
23 enumerated Rule 12(b) of the Federal Rules of Civil Procedure, defendants "have the burden of
24 raising and proving the absence of exhaustion."  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.
25 2003).  The parties may go outside the pleadings, submitting affidavits or declarations under
26 penalty of perjury, but plaintiff must be provided with notice of his opportunity to develop a

8

record. Wyatt v. Terhune, 315 F.3d at 1120 n.14. The court provided plaintiff with such fair notice by Order, filed on October 13, 2009. Doc. 14.

Should defendants submit declarations and/or other documentation demonstrating an absence of exhaustion, making a prima facie showing, plaintiff must refute that showing. Plaintiff may rely upon statements made under the penalty of perjury in the complaint if the complaint shows that plaintiff has personal knowledge of the matters stated and plaintiff calls to the court's attention those parts of the complaint upon which plaintiff relies. If the court determines that plaintiff has failed to exhaust, dismissal without prejudice is the appropriate remedy for non-exhaustion of administrative remedies. Wyatt v. Terhune, 315 F.3d at 1120.

*PLRA Requirements*

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Inmates seeking injunctive relief must exhaust administrative remedies. Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999). In Booth v. Churner, 532 U.S. 731,741, 121 S. Ct. 1819, 1825 (2001), the Supreme Court held that inmates must exhaust administrative remedies, regardless of the relief offered through administrative procedures. Therefore, inmates seeking money damages must also completely exhaust their administrative remedies. Booth v. Churner, 532 U.S. 731, 121 S. Ct. 1819 (inmates seeking money damages are required to exhaust administrative remedies even where the grievance process does not permit awards of money damages). The United States Supreme Court has held that exhaustion of administrative remedies under the PLRA requires that the prisoner complete the administrative review process in accordance with the applicable procedural rules. Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378 (2006). Thus, in the context of the applicable PLRA § 1997e(a) exhaustion requirement, any question as to whether a procedural default may be found should a prisoner plaintiff fail to comply with the procedural rules of a prison's

grievance system has been resolved: the PLRA exhaustion requirement can only be satisfied by "proper exhaustion of administrative remedies....," which means that a prisoner cannot satisfy the requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." Woodford v. Ngo, supra, at 84, 126 S. Ct. at 2382. Moreover, 42 U.S.C. § 1997e(a) provides that no action shall be brought with respect to prison conditions *until* such administrative remedies as are available are exhausted. McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002).

*Administrative Exhaustion Procedure*

In order for California prisoners to exhaust administrative remedies, they must proceed through several levels of appeal: 1) informal resolution, 2) formal written appeal on a CDC 602 inmate appeal form, 3) second level appeal to the institution head or designee, and 4) third level appeal to the Director of the California Department of Corrections. Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. xv, § 3084.5). A final decision from the Director's level of review satisfies the exhaustion requirement. Id. at 1237-38.

*Discussion*

Defendants contend that plaintiff did not exhaust the prison's administrative grievance process as to his First and Eighth Amendment claims against Bishop in Claim Two. They assert that prison records reveal two administrative grievances filed by plaintiff concerning the allegations in the SAC, and that neither one serves to exhaust these claims. Decl. of D. Foston in Support of MTD; MTD, Exs. A (SAC 06-01649), B (SAC 06-01820). Plaintiff has not alleged the existence of any other administrative records concerning his claims against Bishop. Thus, the question before the court is whether SAC 06-01649 and/or SAC 06-01820 serve to exhaust plaintiff's administrative remedies as to defendant Bishop for the First and Eighth Amendment claims in Claim Two.

<u>SAC 06-1649</u>

In SAC 06-1649, plaintiff filed an appeal form dated July 4, 2006 claiming that he

had "become a target of harassment & retaliation for my use of the inmate grievance procedure at CSP-Sac, as well as my 1st Amendment right to petition the court for a redress of grievances." MTD, Ex. A at 4.  After interviewing plaintiff about his appeal on August 30, 2006, a first level reviewer summarized his allegations against defendant Bishop as follows:

> You contend that on 6-29-06, you returned to your assigned housing unit from the Legal Law Library and Officer Winker [sic] refused to let you in and reported to Sergeants Colvin and Bishop that you had been roaming the yard. Sergeant Bishop ordered Officers Hobart and Scruggs to strip search you. You contend that you had Officer Hobart place you in hand cuffs and you were escorted to the Pedestrian Sally Port where you were placed in a holding cell that was drenched with pepper spray. You contend that Sergeants Bishop and Colvin came to the holding cell where you attempted to explain your whereabouts and Sergeant Bishop stated, "Shut up, you are the property of CDC and if I want you to strip everyday you will do it, & if you don't I will come in there and do it for you." You contend that Dr. Gruti saw you in the holding cell and went and informed Sergeant Bishop that you had recently seen Dr. Kim. Dr. Gruti returned stating that Sergeant Bishop stated that you had refused a direct order.

MTD., Ex. A at 6.

The reviewer also noted that plaintiff alleged that Wenkler said the following, concerning defendant Bishop:

> You contend that on or about 6-26-06, while being escorted back to the housing unit, Officer Winker [sic] stated, "who was you in there 'Snitching' on now? You know all the officers on the yard say you're a 'snitch' because you write everybody up. Sergeant Bishop wants to take away your typewriter and make you send it home so you won't be able to file lawsuits."

Id.

The court finds this summary to accurately reflect plaintiff's allegations concerning Bishop in SAC 06-1649.  However, it omits plaintiff's allegation that, while he was in the holding cell, Bishop "instructed Hobart to discipline me for being 'out of bounds' . . . [and] stated "I'll find something for you to write him up for.'" Id. at 12.

SAC 06-1649 resulted in a Director's Level Appeal Decision denying petitioner's

11

appeal on January 12, 2007.  Id. at 2.

    Defendants contend that this grievance is not sufficient to exhaust plaintiff's First Amendment claims against Bishop "because the grievance does not indicate that Bishop had any reason to believe that [Wenkler's] statements were untrue or motivated by Williams's protected conduct[.]"  MTD at 9.  The undersigned finds this argument persuasive.  As to defendant Bishop, petitioner's grievance indicates that on June 29, 2006, Bishop learned from Wenkler that plaintiff had been roaming the yard; that he ordered plaintiff to be strip searched and placed in a holding cell; that he described plaintiff as "out of bounds" and told him he could be strip searched at any time; and that he had plaintiff written up for refusing a direct order.  While, if true, the alleged statements may be considered unprofessional or even provocative, none of this suggests that Bishop was attempting to punish plaintiff for engaging in conduct protected by the First Amendment.

    Moreover, Wenkler's alleged statement on June 26, 2006 that Bishop wanted to take plaintiff's typewriter away so he could not file lawsuits is not sufficient to allege that Bishop attempted to prevent plaintiff from engaging in protected conduct.  It is merely a statement attributed to Bishop by someone else, and thus of little probative value.

    Finally, SAC 06-1649 does not assert that Bishop knowingly subjected plaintiff to a disciplinary proceeding on false charges.  While plaintiff alleges that Bishop told Hobart that he would "find something" to write plaintiff up for, plaintiff does not allege that the resulting RVR for refusing a direct order was based on false information known to Bishop or that Bishop had him written up in retaliation for protected activity.  Because SAC 06-1649 did not put prison officials on notice of a First Amendment claim against Bishop as alleged in Claim Two, it cannot be said to have exhausted any such claim.

    Turning to whether SAC 06-1649 exhausted plaintiff's Eighth Amendment claim of cruel and unusual punishment against Bishop, defendants assert that this grievance "does not indicate . . .that he was aware that the holding cell was contaminated with OC spray" and

"contains no facts which could have put the institution on notice of Williams's allegations in Claim Two . . . that Bishop caused Williams to be exposed to OC spray while dressed in minimal clothing or denied him the opportunity to decontaminate." MTD at 9-10.  Upon careful review of this grievance, the undersigned concludes that it does not allege that Bishop was aware that the holding cell was contaminated with pepper spray, nor that plaintiff tried to communicate this to Bishop while in the cell.  Rather, SAC 06-1649 states that plaintiff tried to tell Bishop about "his whereabouts" while in the holding cell – i.e., where plaintiff was while supposedly roaming the yard.  Indeed, SAC 06-1649 does not allege that plaintiff tried to tell anyone, during his confinement, that the holding cell was contaminated with pepper spray.  Prison officials would have had no reason to impute this knowledge to Bishop on the facts presented.

Moreover, unlike the operative complaint, plaintiff's grievance does not assert that Bishop denied him "medical decontamination" or even a "regular shower" after exposure to pepper spray, and required him to spend the night with burning skin to "teach him a lesson" for filing a grievance.  SAC at 7-10.  Rather, SAC 06-1649 makes no mention of what happened upon plaintiff's release from the holding cage on June 29, 2006.

Because SAC 06-16149 did not put prison officials on notice of Eighth Amendment claims of cruel and unusual punishment against defendant Bishop as alleged in Claim Two, it cannot serve to show administrative exhaustion of such claims.

SAC 06-1820

In SAC 06-1820, plaintiff filed a grievance on July 31, 2006 claiming that, in July 2006, he helped prepare a "group appeal" against defendant Wenkler, which led to the events alleged in Claim Three.  Having reviewed the administrative record of SAC 06-1820, the undersigned concludes that it does not concern the alleged holding cell incident in Claim Two, but rather, describes a subsequent holding cell incident in which the cell allegedly "still reeked of pepper spray from the last time he was there."  MTD, Ex. B at 2.

Nor does SAC 06-1820 concern the RVR disciplinary hearing in which plaintiff

13

was found guilty of violating a direct order, although the fact that Wenkler escorted plaintiff to a "115 hearing" was mentioned in passing. Id. at 4. Recounting the events just prior to this hearing, plaintiff alleged:

> Upon reaching the watch office I was instructed to sit on the bench. Wenkler then found SGT. Bishop in the sally port area just outside of the clinic along with another SGT. Wenkler then began reiterating the events which just occurred with inmate Wright in the housing unit, & when I heard Wenkler implicate me in his scheme trying to imply that he felt threatened by me, I spoke out & advised SGT. Bishop of what really occurred, & how Wenkler was using malfeasance to reverse the roles when Wenkler himself is the threat to this facility.
>
> . . . SGT. Bishop got upset & stated "no one talks about one of my officers like that" to which I stated "well it's the truth."
>
> Bishop then ordered me into the holding cage where the sun was blazing upon, & the cage still reeked of pepper spray . . .

Id. at 6. Thus, while plaintiff suggests in SAC 06-1820 that Bishop retaliated against him for criticizing Wenkler by placing him in the contaminated holding cell, he does not suggest that Bishop acted in a retaliatory manner with regard to the RVR disciplinary hearing described in Claim Two.

In sum, because SAC 06-1820 concerns the events alleged in Claim Three, it cannot serve to administratively exhaust plaintiff's First or Eighth Amendment claims against defendant Bishop in Claim Two. Morton v. Hall, 599 F.3d 942, 946 (9th Cir. 2010) (district court required to dismiss complaint when administrative remedies not exhausted).

Plaintiff argues that any failure to exhaust his remedies as to defendant Bishop should be excused because Bishop's "serious threats of substantial retaliation against an inmate for lodging in good faith a grievance make the administrative remedy 'unavailable' and thus lift the [PLRA] administration exhaustion requirement . . ." Opp. at 6-7, citing Turner v. Burnside, 541 F.3d 1077, 1084-85 (11th Cir. 2008). In Turner, the prisoner alleged that "he properly filed his formal grievance but [the Warden] tore it up." 541 F.3d at 1083. The court held that "a prison official's serious threats of substantial retaliation against an inmate for lodging in good faith a

14

grievance make the administrative remedy 'unavailable' . . ." Id. at 1085.  The court set out two conditions that must be satisfied before the exhaustion requirement is lifted: "(1) the threat actually did deter the plaintiff inmate from ... pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from ... pursuing the part of the grievance process that the inmate failed to exhaust." Id. (citing Hemphill v. New York, 380 F.3d 680, 688 (2nd Cir.2004).)  Plaintiff has not made either showing here, and so this argument is unavailing.

                                                Conclusion

        Because the court finds that defendants' motion to dismiss Claim Two as to defendant Bishop should be granted due to plaintiff's failure to exhaust administrative remedies, the court need not separately dismiss those Claim Two allegations against Bishop concerning the RVR disciplinary hearing, as discussed above.

        Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion to dismiss Claim Two, alleging violations of plaintiff's First and Eighth Amendment rights, as to defendant Bishop (Doc. 27) should be granted for failure to exhaust administrative remedies. Defendants be directed to file a responsive pleading with regard to the other claims within twenty-eight days of adoption of these findings and recommendations, should that occur.

        These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are

\\\\\

\\\\\

\\\\\

1  advised that failure to file objections within the specified time may waive the right to appeal the
2  District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
3  DATED: 12/14/2010

/s/ Gregory G. Hollows

_____
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:0014
will1245.mtd